## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **ERIC P. LOHSE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-cv-3022** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>ORDER</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 17).  Magistrate Judge Schanzle-Haskins recommends that this Court: (1) grant Plaintiff Eric P. Lohse's Motion for Summary Judgment (d/e 11); (2) deny Defendant's Motion for Summary Affirmance (d/e 16); and (3) reverse and remand Defendant's decision that Plaintiff was not disabled or entitled to Social Security Disability Insurance Benefits.  On April 16, 2020, Defendant filed Objections to Magistrate Judge's Report and Recommendation (d/e 19), in which he asserts two objections to the

Report and Recommendation.  For the reasons set forth below,
Defendant's objections are OVERRULED.  The Court ACCEPTS and
ADOPTS the Report and Recommendation.

## I. <u>LEGAL STANDARD</u>

When a magistrate judge proposes factual findings and
recommendations, the district court "may accept, reject, or modify,
in whole or in part, the findings or recommendations made by the
magistrate judge."  28 U.S.C. § 636(b)(1).  The district court may
also receive further evidence or recommit the matter to the
magistrate judge with instructions.  <u>Id.</u>  The district court reviews
<u>de novo</u> any part of a magistrate judge's report and
recommendation to which a specific written objection has been
made.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).  "If no objection
or only partial objection is made, the district court judge reviews
those unobjected portions for clear error."  <u>Johnson v. Zema Sys.
Corp.</u>, 170 F.3d 734, 739 (7th Cir. 1999).

In conducting this <u>de novo</u> review, the Court reviews the
decision of the ALJ to determine whether the decision is supported
by substantial evidence.  <u>See</u> <u>Delgado v. Bowen</u>, 782 F.2d 79, 82
(7th Cir. 1986).  If the decision has such support, the Court may

not substitute its judgment for that of the ALJ.  See Id.

"Substantial evidence is only such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion."  Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir. 1997).

This Court will not review the credibility determinations of the

ALJ unless the determinations lack any explanation or support in

the record.  Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008).

The ALJ must articulate at least minimally her analysis of all

relevant evidence, Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.

1994), and "the [ALJ's] decision cannot stand if it lacks evidentiary

support or an adequate discussion of the issues."  Lopez ex rel.

Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  Additionally,

the ALJ must "build an accurate and logical bridge from the

evidence to his conclusion."  Clifford v. Apfel, 227 F.3d 863, 872

(7th Cir. 2000).

## II. **BACKGROUND**

The Court adopts the facts as presented by Magistrate Judge

Schanzle-Haskins in the Report and Recommendation, subject to

the revision noted above.  The Court sets forth below only those

facts necessary to resolve Plaintiff's objections to the Report and Recommendation.

Plaintiff, Eric Paul Lohse, has a medical degree specializing in ophthalmology. Plaintiff completed a residency in ophthalmology in 1987 and a cornea fellowship in 1988. R. 174-75. Thereafter, he worked as an ophthalmologist and ophthalmic surgeon until September 22, 2014, when he ceased practicing. R. 175.

Plaintiff suffers from degenerative disc disease in the cervical spine, degenerative joint disease in the right knee, arthritis in the left hip and a labral tear. R. 27, 174. Beginning in September 2014, Plaintiff sought treatment from Dr. Bryan Albracht. Plaintiff stated that he had been suffering from neck pain for the past five years, had played football in high school, and was in a motorcycle accident when he was 19 years old. Id. Plaintiff also sought treatment from Dr. Brian Russell.

Plaintiff testified at the evidentiary hearing with the ALJ that his neck hurt all day with a pain score of 3 out of 10 but going up to 8 out of 10 sometimes. R. 62. He could not concentrate when his pain was above 5 or 6 out of 10. Id. From 2009 until 2014, Plaintiff cut his own hours from 80 hours a week down to 45 hours

a week before he quit his practice altogether.  R. 44.  Plaintiff also testified that he stopped practicing after he dropped instruments three times in one surgery.  R. 57.

Plaintiff made changes to his office and the tables and equipment in the operating rooms to attempt to modify for his pain. R. 77.  In the early 2000s, Plaintiff modified his practice due to back pain from performing cornea surgeries by starting an exercise program and performing more cataract and LASIK laser eye surgeries instead of cornea transplant surgeries.  R. 49.  The cataract and LASIK laser eye surgeries are shorter procedures as the cataract surgery takes 20 minutes and the LASIK laser eye surgery takes 10 to 15 minutes.  Id.

At the evidentiary hearing, the ALJ inquired about other jobs in the medical field.  Plaintiff testified that he could not practice in another area of medicine because he was so specialized.  R. 53.  He also did not think he could perform eye examinations typically performed by optometrists because he would still need to sit for an extended period of time and he did not know how to perform the examination.  R. 66.

In the decision, the ALJ applied the five-step analysis set forth in the Social Security Regulations (20 C.F.R. §§ 404.1520).  At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful employment since September 22, 2014.  R. 27.  The ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease in the cervical spine, degenerative joint disease in the right knee, and arthritis and a labral tear in the left hip (Step 2), but the impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Step 3).  R. 27-28.

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could climb ladders, ropes or scaffolds only occasionally and crawl no more than frequently.  R. 28.  The ALJ relied on the opinion of Dr. Prasad Kareti, a state agency physician, who opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; and frequently crawl.  R. 30, 83-86.  The ALJ also relied

on the opinion of Dr. Charles Kenney, a state agency physician, who opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; and frequently crawl. R. 30, 91-93. The ALJ also relied on the opinion of Plaintiff's physical therapist, Theresa Delvo, PT, that Plaintiff could perform medium work generally. R. 29.

However, Delvo also opined that Plaintiff's pain precluded him from performing the essential functions of being an ophthalmic surgeon, which required sitting still for extended periods of time. R. 263. Delvo found that Plaintiff "tolerated surgery simulation ranging between 7:20-12:31 minutes, which is less than required for Cataract surgery (estimating 20 min), Lasik surgery (estimating 20 minutes to do both eyes and up to 30 eyes/day) and Pterygum surgery is estimated to be 1.5 hours." Id. The ALJ acknowledged Delvo's opinion of Plaintiff's limitation, stating in the ALJ decision that Plaintiff "tolerated surgery simulation for up to twelve and a-half minutes, less than required for the surgeries he performed in the past that reportedly lasted 30 to 90 minutes." R. 29.

Bob Hammond, MA, ABVE, prepared a vocational report for Plaintiff, on which the ALJ relied.  R. 31.  Hammond opined that Plaintiff could perform light work that would allow him to change positions every 20 months.  However, Hammond opined that Plaintiff could not return to his prior work as an ophthalmologist because "he is unable to maintain a static position with his head while performing surgery and while looking through a microscope." Hammond noted that Plaintiff was not able to "maintain a seated position for periods of time to prepare reports, read medical records, and also doing other computer related tasks."  Plaintiff had to change positions every 20 minutes, and his pain would increase throughout the day.  In sum, Hammond opined that Plaintiff's "need to alternate his position every 20 minutes and not maintain a static position" reduced Plaintiff's functional capacity "to some light but mostly sedentary levels of return to work."  R. 242.  The ALJ found Hammond's opinions unpersuasive.  R. 31.

The ALJ found that Plaintiff could perform his past work as an ophthalmologist as that job is performed in the national economy. R. 30.  The ALJ noted that Plaintiff previously made changes to his practice, including buying specialized equipment and reducing his

hours. R. 30.  However, Plaintiff had "not met his burden of proving that additional changes were not feasible."  Id.

The ALJ also relied on testimony from vocational expert Albert Walker.  Id.  In short, Walker opined that if a person had to change positions every 12 to 15 minutes, that person could not work as an ophthalmologist.  R. 75-76.   He also testified that if a person had to change positions at least once every 30 minutes, that person would not be able to work as an ophthalmologist.  R. 75.  However, the ALJ relied on Walker's testimony that an individual with the residual functional capacity in this case could perform the claimant's past work as an ophthalmologist.  R 30.  But Walker qualified that opinion by saying ". . . but Lohse could not perform the job as Lohse performed it as Lohse had described in the July 23, 2015 Work History Report form."  R. 74.  The ALJ found Plaintiff's testimony that he met with patients in different waiting rooms every 30 minutes was inconsistent with Walker's opinion.  R. 31.

Moreover, the ALJ found that Plaintiff "is also a licensed medical doctor; he has not submitted evidence of any barrier to

entry into general practice based on his education and licensing."
R. 30.

The ALJ ultimately concluded that Plaintiff was not disabled.
When the Appeals Council denied Plaintiff's request for review, the
ALJ's decision became the final decision of the Commissioner.
Plaintiff appealed, arguing that the ALJ committed reversible error.

On April 14, 2020, Magistrate Judge Schanzle-Haskins issued
a Report and Recommendation finding the ALJ's decision was not
supported by substantial evidence and recommending that
Plaintiff's Motion for Summary Judgment be granted, Defendant's
motion for Summary Affirmance be denied, and the decision of the
Commissioner be reversed and remanded pursuant to 42 U.S.C. §
405(g) sentence four.

### III. <u>ANALYSIS</u>

The Commissioner raises two objections to the Magistrate
Judge's Report and Recommendation (d/e 17).  First, the
Commissioner argues that there is no reversible error with respect
to the ALJ's determination that Plaintiff could perform past relevant
work as an ophthalmologist.  Second, any error with respect to the

ALJ's statement that Plaintiff had not proven he could not work in the general practice of medicine was harmless.

The Magistrate Judge found that the ALJ's decision that Plaintiff could perform past relevant work as an ophthalmologist was not based on substantial evidence, to which the Commissioner disagrees.  The ALJ relied on the Delvo's test and the opinion of Walker, the vocational expert.  The ALJ acknowledged that Delvo opined that Plaintiff could only maintain a static head position in a surgical stimulation for a range of 7 minutes and 20 seconds to 12 minutes and 30 seconds.  However, the ALJ did not acknowledge that 7 minutes and 20 seconds to 12 minutes and 30 seconds was less than the time required for surgeries performed by Plaintiff. Delvo noted that Plaintiff's tolerance was "less than required for Cataract surgery (estimating 20 min), Lasik surgery (estimating 20 minutes to do both eyes and up to 30 eyes/day) and Pterygum surgery is estimated to be 1.5 hours."  R. 263.

Plaintiff argues that the Delvo test is not the only evidence that was presented to the ALJ.  The record reflects that Plaintiff had to change positions to relieve his pain.  Dr. Albrecht noted the progressive worsening of Plaintiff's pain that led to Plaintiff

discounting his practice because he was dropping instruments during surgery.  R. 364.  Dr. Russell opined that if Plaintiff continued to use the microscope on a regular basis, Plaintiff would be unable to return to work full time.  R. 299.  Plaintiff argues that his testimony also shows that he could not perform his work as an ophthalmologist because of his need to frequently change positions.  Plaintiff also points to the opinion of the vocational expert Walker that Plaintiff could not work as an ophthalmologist unless he could remain still for 30 minutes.  Walker also opined that that if a person had to change positions every 12 to 15 minutes, that person could not work as an ophthalmologist.  R. 75-76.

The ALJ found that Plaintiff previously met with different patients in different waiting rooms every 20 minutes as part of his ophthalmology.  R. 31.  Plaintiff argues that the ALJ intended that finding to imply Plaintiff never changed positions during those 20 minutes.  Alternatively, Plaintiff argues the ALJ was indicating Plaintiff could still perform a portion of his work as an ophthalmologist.  Plaintiff testified that performing the examinations was sometimes as difficult as surgeries because he had to maintain a static position.  Plaintiff also contends that a

finding of the ability to perform only part of a job is not the required proof.  Instead, Plaintiff argues that the ALJ's finding is inconsistent with a finding that Plaintiff could perform the work as generally performed in the national economy.

The Magistrate Judge noted that the Dictionary of Occupational Titles (DOT) lists surgery as a major function of an ophthalmologist's job.  The DOT code, which states the job requirements of an ophthalmologist, provides the following description: "Performs various tests to determine vision loss. Prescribes and administers medications, and performs surgeries, if indicated."  DOT Code 0701.101-058.  The Commissioner takes administrative notice that the DOT contains reliable job information.  20 C.F.R. § 404.1566(d); SSR 00-4p, at 2.  While Plaintiff may have met with different patients every 20 minutes, pursuant to the DOT, Plaintiff's occupation also requires the ability to perform surgery.  The evidence shows Plaintiff could not perform the surgeries that he had performed in his past work.

Next, the Commissioner argues that Plaintiff "has failed to meet his burden of proving that he cannot perform past relevant work as an ophthalmologist if he treats his neck pain with over-the-

counter NSAIDs." <u>See</u> d/e 19, p. 5.  The ALJ noted that "[o]ral medications helped but [Plaintiff] did not take them because of GERD and bloating."  R. 28-29.  The Commissioner contends that it is Plaintiff's burden to prove that he could not work if he more regularly used over-the-counter NSAIDs.  The Magistrate Judge found that such argument runs afoul of the <u>Chenery</u> principle.  "Under the <u>Chenery</u> doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."  <u>Kastner v. Astrue</u>, 697 F.3d 642 (7th Cir. 2012) (citing <u>Securities & Exchange Commission v. Chenery Corp.</u>, 318 U.S. 80, 87-88 (1943)).

Plaintiff argues that the ALJ's decision mentioned Plaintiff's testimony about trying NSAIDs medication but said no more than that.  Plaintiff contends that the ALJ did not making a finding that Plaintiff could have used medication to perform past relevant work.

The Court agrees that the ALJ's decision was not based on an opinion that Plaintiff could have used medication to perform past relevant work.  Pursuant to the <u>Chenery</u> doctrine, the Magistrate Judge was correct in not considering the Commissioner's argument about medication.

The Commissioner also argues that Plaintiff did not meet his burden of proving that he could not perform past relevant work if he reduced his hours or adjusted his practice.  The Commissioner contends that the ALJ considered Plaintiff reducing his hours and adjusting his practice as a basis for the ALJ's decision, and, as such, the Commissioner's argument does not violate Chenery.  The Magistrate Judge did not consider the Commissioner's argument of part-time work and accommodations, finding that it does run afoul of Chenery.

The Commissioner notes that Plaintiff reduced his hours from 70 to 80 hours a week to 45 hours per week, the latter of which earned Plaintiff $400,000 per year.  R. 45, 163.  According to the Commissioner, the ALJ found that Plaintiff had not met his burden to prove he could not earn substantial gainful activity levels of income if he further reduced his hours.  In 2017, the substantial gainful activity level was earning $1,170 for a non-blind person. See 20 C.F.R. § 404.1574(b)(2); POMS DI 10501.015.  The Commissioner argues that Plaintiff could work 20 minutes a day for 21 days and make over the substantial gainful activity level.

Plaintiff argues that part-time work was not discussed in the ALJ's decision. The ALJ found that Plaintiff had purchased specialized equipment and reduced his hours of work. The ALJ went on to say, "However, [Plaintiff] has not met his burden of proving that additional changes were not feasible." R. 30. While the ALJ mentions Plaintiff previously reduced his hours, the ALJ said Plaintiff did not prove that *additional* changes were not feasible. If the ALJ meant to say Plaintiff did not meet his burden of proving that Plaintiff could have reduced his hours closer to the the substantial gainful activity level, the ALJ could have said so. Without more information from the ALJ, the Court would be speculating that the ALJ meant Plaintiff failed to reduce his hours closer to the substantial gainful activity level, which is in violation of the <u>Chenery</u> principle.

Assuming the ALJ intended to include part-time work in the decision, the Commissioner argues that an hour requirement does not exist as long as the individual meets the substantial gainful activity threshold. The Commissioner cites to a footnote in a Social Security ruling, arguing that it held that if a person can perform part-time work that is substantial gainful activity, the individual

"must be found not disabled."  <u>See</u> d/e 19, p. 6.  Plaintiff points out

that the quote is a small part of a larger footnote.  The footnote

provides:

> The ability to work 8 hours a day for 5 days a week is not
> always required when evaluating an individual's ability to
> do past relevant work at step 4 of the sequential
> evaluation process. Part-time work that was substantial
> gainful activity, performed within the past 15 years, and
> lasted long enough for the person to learn to do it
> constitutes past relevant work, and an individual who
> retains the RFC to perform such work must be found not
> disabled.

Titles II & Xvi: Assessing Residual Functional Capacity in Initial

Claims, SSR 96-8P, 1996 WL 374184, at *8 (July 2, 1996).  The

Commissioner is interpreting that ruling as requiring Plaintiff to

prove future part-time work is impossible.  The Court does not

share the same interpretation of the ruling.  As Plaintiff notes, the

Social Security ruling was assessing past part-time work that the

individual performed, not that the individual's full-time work must

be considered on a part-time basis.  In this case, no evidence has

been presented that Plaintiff previously performed past part-time

work.

An individual's "past relevant work" is defined as "work that

you have done within the past 15 years, that was substantial

gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1).  When assessing an individual's physical abilities for residual functional capacity, the ALJ assesses an individual's ability "to work activity on a regular and continuing basis."  20 C.F.R. § 404.1545(b).  "Regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8P.  However, if an individual has performed past part-time work, that work may be considered.  See 20 C.F.R. § 404.1572(a)("Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.").  The Court finds that the law does not support a burden on Plaintiff to prove that he could not perform past relevant work if he reduced his hours.

The same is true for the argument made by the Commissioner that Plaintiff had a burden to prove that adjusting his practice was unfeasible.  The ALJ found that Plaintiff had "not produced evidence that additional changes in the focus of his practice were not feasible."  R. 29.  However, the ALJ and the Commissioner did

not provide any other details or guidance on what additional changes Plaintiff should have made.  The ALJ acknowledged that Plaintiff reduced his hours of work and purchased specialized equipment.  The Commissioner argues that Plaintiff could continue to perform surgeries.  However, Plaintiff stopped practicing after he dropped instruments three times during a surgery.  R. 57.

Plaintiff argues that employer accommodations are prohibited from being considered under Step 4.  See POMS DI 25005.001C ("When evaluating a claimant's ability to do PRW at step 4, do not consider: . . . whether the employer had accommodations for the claimant that are no longer available . . . ."); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 795–96 (1999)("For example, since the Social Security Administration (SSA) does not take into account the possibility of 'reasonable accommodation' in determining SSDI eligibility . . . .").  The Commissioner did not cite any legal authority supporting the argument that Plaintiff has a duty to prove that adjusting his practice was unfeasible.  Based on the evidence, Plaintiff proved that he made several accommodations to his practice based on his severe impairments.

The Court agrees with the Magistrate Judge that the record shows that Plaintiff met his burden of proof that he could not perform his past work as an ophthalmologist.  Therefore, the Court finds that the ALJ's determination that Plaintiff could perform his past work as an ophthalmologist was reversible error.

Lastly, the Commissioner argues that the ALJ's conclusion that Plaintiff did not meet his burden of showing that Plaintiff could not use his medical degree to practice in general medicine was harmless error because the ALJ's decision is supported by substantial evidence.  Based on the foregoing, the Court finds that the error was not harmless.  Plaintiff had the burden of proving he could not perform his past relevant work as an ophthalmologist.  As the Magistrate Judge notes, Plaintiff did not have the burden of proving he could not do other jobs.  Being a general practitioner is a different job than ophthalmologist pursuant to the Dictionary of Occupational Titles.  Placing the burden on Plaintiff in Step 4 was error.  Step 5 places the burden on the Commissioner to present evidence that Plaintiff could perform other jobs that exist in the national economy.  However, such evidence is not before the Court. As the Magistrate Judge stated, the ALJ will need to address how

the jobs of ophthalmologist and general practitioner are the same for purposes of Step 4 or address the issue at Step 5, should the ALJ reach the question on remand.

### IV. **CONCLUSION**

For the reasons stated, the Commissioner's Objection to the Magistrate Judge's Report and Recommendation (d/e 19) is DENIED.  This Court ADOPTS the Magistrate Judge's Report and Recommendation (d/e 17) in full.  Plaintiff's Motion for Summary Judgment (d/e 11) is GRANTED, and Defendant's Motion for Summary Affirmance (d/e 16) is DENIED.  The decision of the Commissioner is REVERSED and REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**ENTERED: September 22, 2020**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**